Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KATHY SHOULARS,** *on behalf of herself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>**HALSTED FINANCIAL SERVICES, LLC** and **DNF ASSOCIATES LLC,**<br><br>Defendants. | Civil Action No.: 21-16560 (ES) (ESK)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

Plaintiff Kathy Shoulars filed this action against Halsted Financial Services, LLC ("Halsted") and DNF Associates LLC ("DNF") (together, "Defendants") on behalf of herself and all others similarly situated for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (D.E. No. 13 ("Amended Complaint" or "Am. Compl.")). Before the Court are Defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.E. Nos. 19 & 20). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). As set forth below, Defendants' motions are **GRANTED**.

**I.      BACKGROUND**

As alleged in the Amended Complaint, sometime before October 15, 2020, Plaintiff incurred a "debt," as defined under the FDCPA, to "BUILD CARD/REPUBLIC BANK" ("Republic Bank"). (Am. Compl. ¶ 21). Before October 15, 2020, Plaintiff's debt obligation to Republic Bank was purchased by and/or sold to DNF and referred to Halsted for collection. (*Id.*

1

¶¶ 28–29). On October 15, 2020, Plaintiff received a letter from Halsted regarding the Republic Bank obligation (the "October 15 Letter" or the "Letter"). (*Id.* ¶ 30 (citing Exhibit A to Am. Compl. ("Ex. A"))). The top right-hand corner of the Letter depicts a box with the following text:

> **40%**
> off your balance

(Ex. A).[1] Below, the Letter notes Plaintiff's "Balance Due" of $690.19 and lists DNF as the creditor. (*Id.*). The Letter addressed to Plaintiff then reads:

> Your account has been placed by [DNF] with our agency for collections. Please contact us at 855-221-4379 ext. 701. You do have options!
>
> 1) We are offering a compromise of $414.11 to resolve this debt. That's a savings of $276.08!
>
> 2) If you cannot take advantage of the above offer, we can offer you a compromise of $552.15 in three payments of $184.05, $184.05 and $184.05, over three consecutive months. That's a savings of $138.04.

(*Id.*). In bold lettering, the Letter notes that "**[t]his office is not obligated to renew these offers after 12/1/2020**." (*Id.*). In addition, directly below, the Letter contains language that notifies Plaintiff of her legal rights, as mandated by 15 U.S.C. § 1692g:

> This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request from this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original

---

[1] Because the Letter attached as Exhibit A is a low-resolution image, the Court replicated the above-referenced text and rectangular box to the best of its technical abilities.

>   creditor, if different from the current creditor. [hereafter, "Validation Notice"].

(*Id.*).

On September 6, 2021, Plaintiff initiated this action alleging that Halsted engaged in "false, deceptive, or misleading representations or means" in violation of the FDCPA, 15 U.S.C. §§ 1692g and 1692e (Count I). (D.E. No. 1 ¶ 59; *see also* Am. Compl. ¶¶ 74–94). Halsted moved to dismiss (D.E. No. 10), and Plaintiff filed the Amended Complaint adding DNF as a defendant. (Am. Compl.). Defendants now move to dismiss the Amended Complaint. (D.E. Nos. 19 & 30). The motions are fully briefed. (D.E. No. 19-1 ("H. Mov. Br."); D.E. No. 23 ("1st Opp."); D.E. No. 25; D.E. No. 30-1 ("DNF Mov. Br."); D.E. No. 31; D.E. No. 33).

## II.   LEGAL STANDARD

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Federal Rule of Civil Procedure 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). "[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded. *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

While the Court generally "may not consider matters extraneous to the pleadings" when deciding a Rule 12(b)(6) motion, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), an exception to this general rule provides that the Court "may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (first citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); and then quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004)).

### III. DISCUSSION

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA "provides consumers with a private cause of action against debt collectors who fail to comply with the Act." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006). Because the FDCPA is a remedial statute, courts "construe its language broadly so as to effect its purposes." *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 367 (3d Cir. 2011) (citing *Brown*, 464 F.3d at 453).

"To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015) (quoting *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014)).

Here, the parties' dispute centers on the fourth element—whether the October 15 Letter violates Sections 1692g and 1692e of the FDCPA. Specifically, Plaintiff submits that the October 15 Letter violates Sections 1692g(a)(4), (5), and 1692g(b) because it contains misleading compromise offers that overshadow and contradict the Validation Notice, leaving Plaintiff unsure of how to address or dispute her debt. (Am. Compl. ¶¶ 84–87; 1st Opp. at 14–19). Plaintiff maintains that the Letter is deceptive and misleading in violation of Section 1692e for the same reasons that underlie her Section 1692g claim. (1st Opp. at 15 n.1). Alternatively, she contends that violations of Sections 1692e, 1692e(2)(A), and 1692e(10) occurred because (i) only one of the Letter's compromise offers provided her with 40% off her balance due without any clarifying language, and (ii) the Letter failed to state whether Plaintiff's payment should be received or sent by December 1, 2020. (*Id.*; Am. Compl. ¶¶ 79–83). Defendants contend that Plaintiff fails to plausibly plead an FDCPA claim under any provision. (*See generally* H. Mov. Br. & DNF Mov. Br.).[2] The Court addresses each argument in turn.

### A. The Compromise Offers Do Not Overshadow or Contradict the Validation Notice Under 15 U.S.C. § 1692g

The "debt validation provisions of [S]ection 1692g were included by Congress to guarantee that consumers would receive adequate notice of their rights under the law." *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000) (citing *Miller v. Payco-General Am. Credit, Inc.*, 943 F.2d 482, 484 (4th Cir. 1991)). Pursuant to Section 1692g, a debt collector must provide the following information in writing to the debtor "[w]ithin five days after the initial communication with a

---

[2] Because DNF "adopts and incorporates Halsted's motion to dismiss . . . and reply brief" (DNF Mov. Br. at 1), the Court primarily cites to Halsted's motion papers and refers to the arguments as being made by both "Defendants." Furthermore, because the Court concludes that Plaintiff fails to state an FDCPA claim as a matter of law, it need not address DNF's specific argument that the amended allegations fail as to it under Rule 8(a). (*See* DNF Mov. Br. at 3–4).

consumer . . . unless the following information is contained in the initial communication or the consumer has paid the debt":

> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).  "Paragraphs 3 through 5 of [S]ection 1692g(a) contain the validation notice—the statements that inform the consumer how to obtain verification of the debt and that he has thirty days in which to do so." *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 147 (3d Cir. 2013) (quoting *Wilson*, 225 F.3d at 353¬54).  After a consumer disputes a debt in writing within the thirty-day period or seeks clarification as to the identity of the original creditor, Section 1692g(b) provides that "the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector." § 1692g(b).

6

A validation notice must be "interpreted from the perspective of the least sophisticated debtor"[3] and must not be "overshadowed or contradicted by accompanying messages from the debt collector." *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir. 1991) (noting that "statutory notice must not only explicate a debtor's rights; it must do so effectively") (internal quotations omitted), *overruled on other grounds by Riccio v. Sentry Credit, Inc.*, 954 F.3d 582 (3d Cir. 2020); *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 471 (3d Cir. 2021). "The basic purpose of the least-sophisticated [debtor] standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Lesher v. Law Offices Of Mitchell N. Kay, PC*, 650 F.3d 993, 997 (3d Cir. 2011) (quoting *Brown*, 464 F.3d at 453). "Although the least sophisticated debtor standard is lower than the standard of a reasonable debtor, it preserves a quotient of reasonableness and presumes a basic level of understanding and willingness to read with care." *Jensen*, 791 F.3d at 418 (internal citations and quotations omitted). It does not, however, subscribe to "bizarre or idiosyncratic interpretations of collection notices." *Hopkins*, 994 F.3d at 122 (quoting *Wilson*, 225 F.3d at 354–55).

Under the least sophisticated debtor standard, a debt collector violates the FDCPA when its communication misleads the recipient into thinking that he or she has a legal obligation to pay a time-barred debt, *see Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 428 (3d Cir. 2018), or "when it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Caprio*, 709 F.3d at 149 (citing *Wilson*, 225 F.3d at 354). Furthermore, the least sophisticated debtor standard is objective, "meaning that the specific plaintiff need not prove that she was actually confused or misled, only that the objective least sophisticated debtor would be." *Jensen*, 791 F.3d 4 at 419. Whether a collection letter would mislead the least sophisticated debtor or

---

[3] While courts sometimes refer to this standard as the "least sophisticated consumer" or the "unsophisticated debtor," the same underlying principles apply. *See Hopkins v. Collecto, Inc.*, 994 F.3d 117, 121 (3d Cir. 2021).

contradict or overshadow the validation notice are questions of law that may be resolved in a Rule 12(b)(6) motion.  *Smith v. Lyons, Doughty & Veldhuius, P.C.*, No. 07-5139, 2008 WL 2885887, at *3 (D.N.J. July 23, 2008); *Wilson*, 225 F.3d at 353 n.2.

If a debt collector complies with the validation notice requirements pursuant to Section 1692g, "[t]here is nothing improper about making a settlement offer."  *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 299 (3d Cir. 2008) (quoting *Evory v. RJM Acquisitions Funding LLC*, 505 F.3d 769, 775 (7th Cir. 2007)).  "Overshadowing" occurs when the format of a letter does not allow the consumer to see the validation notice, leaving her "in the dark about h[er] dispute and/or validation rights."  *Bernard v. Radius Glob. Sols., LLC*, No. 21-3605, 2022 WL 1557270, at *3 (E.D. Pa. May 17, 2022) (citing *Jewsevskyj v. Fin. Recovery Servs., Inc.*, 704 F. App'x 145, 148 (3d Cir. 2017)).  In this regard, courts evaluate collection letters for both "form" and "substance."  For example, courts have found overshadowing when the validation notice appears in fine print, in a different font, or when it is located on the back of the letter without any notification on the front that alerts the consumer to the disclosure.  *Id.* (first citing *Wilson*, 225 F.3d at 356; and then citing *Hayes v. Collecto, Inc.*, No. 20-0411, 2020 WL 4587985, *5 (W.D. Pa. July 23, 2020), *report and recommendation adopted*, 2020 WL 4584226 (W.D. Pa., Aug. 10, 2020)).

An "inconsistency" occurs when a debt collector insinuates that payment is due *before* the dispute period expires, effectively resulting in an illusory dispute period and validation notice.  *Bernard*, 2022 WL 1557270, at *4 (first citing *Graziano*, 950 F.2d at 111; and then citing *Larkin v. Turner*, No. 18-9357, 2019 WL 6975059, at *4 (D.N.J. Dec. 18, 2019)); *Wilson*, 225 F.2d at 359–60 (recognizing that courts of appeals have found Section 1692g violations when "a written communication contain[s] language which demanded payment within a time period *less than* the

statutory thirty-day period and the demand was communicated in a format that emphasized the duty to make payment and obscured the fact that the debtor had thirty days to dispute the debt") (emphasis added).

In *Wilson*, the Third Circuit characterized plaintiff's letter as presenting two options, neither of which overshadowed or contradicted the other: "(1) an opportunity to pay the debt immediately and avoid further action, or (2) notify [defendant] within thirty days after receiving the collection letter that he disputes the validity of the debt." 225 F.2d at 356. Following *Wilson*, courts in our District recognize that a consumer's option to either dispute the debt or make a payment is consistent with Section 1692g, so long as any deadline for payment does not fall within the thirty-day dispute period. *See, e.g.*, *Bernard*, 2022 WL 1557270, at *4; *Rhee v. Client Servs., Inc.*, No. 19-12253, 2020 WL 4188161, at *6 (D.N.J. July 21, 2020) ("[T]he fact that the Debt Collection Letter provided [p]laintiff with forty days to accept the resolution offer does not overshadow the thirty-day requirement in the validation notice."); *Panto v. Pro. Bureau of Collections*, No. 10-4340, 2011 WL 843899, at *4 (D.N.J. Mar. 7, 2011) (same).

Here, Plaintiff argues that the October 15 Letter "overshadowed" and "contradicted" her right to dispute the debt within thirty days because it contains compromise options without further explaining the December 1, 2020 expiration date. (1st Opp. at 16–19). Accordingly, she asserts that the Validation Notice leaves the least sophisticated consumer uncertain of his or her rights. (*Id.* at 17). For example, Plaintiff maintains that it is unclear whether her acceptance of a compromise option would dissolve her right to dispute the debt within thirty days. (*Id.* at 17). Conversely, if she disputed the debt, but Halsted did not verify the debt before December 1, 2020, Plaintiff maintains it is unclear whether the compromise options would be tolled pending her receipt of verification. (*Id.* at 17–18). Although Plaintiff could select a compromise option *and*

9

dispute the debt, she argues that this scenario results in uncertainty if the debt could not be verified and/or a judgment could not be obtained—leaving her potentially improper payment in limbo. (*Id.* at 18). Defendants argue that the Letter complies with Section 1692g in both form and substance. (H. Mov. Br. at 7–11). For the reasons stated below, the Court agrees with Defendants.

The Validation Notice is not overshadowed, nor is it contradicted by inconsistent statements in the October 15 Letter. First, the Validation Notice is printed on the front page, in the same font and size as the remainder of the letter. (*See* Ex. A). It also contains all language required under Section 1692g(a)(3)–(5). Thus, to the extent disputed, the Court finds no "overshadowing" in the Letter's form. *See Bernard*, 2022 WL 1557270, at *4 (concluding the same); *see also Pistone v. Halsted Fin. Servs., LLC*, No. 21-4167, 2022 WL 525934, at *5 (D.N.J. Feb. 22, 2022).

Second, although Plaintiff seemingly argues that the period in which she could accept a compromise offer interfered with the 30-day dispute period, she clearly and unambiguously had the option to request validation and dispute the debt for thirty days.[4] The Letter does not demand payment, threaten legal recourse, or emphasize any of Plaintiff's options over the others. *See Bernard*, 2022 WL 1557270 at *4; *Pistone*, 2022 WL 525934, at *5. Thus, because the Letter does not suggest that Plaintiff had to pay her debt prior to the thirty-day dispute period and relinquish her validation rights, her claim pursuant to Section 1692g necessarily fails. *See, e.g.*, *Cohen v. Mercantile Adjustment Bureau, LLC*, No. 21-16977, 2022 WL 1567798, at *4 (D.N.J. May 18, 2022); *Pistone*, 2022 WL 525934, at *5; *Rhee*, 2020 WL 4188161, at *6.[5]

---

[4] Even accepting Plaintiff's argument that she would have been required to mail her payment a few days before December 1, 2020 (1st Opp. at 17), she does *not* allege, much less argue, that her payment necessarily *must have been* mailed by or before the thirty-day dispute period. (*See id.*; *see also* Am. Compl.).

[5] Plaintiff provides no authority to support her contention that Halsted needed to include a reconciling statement to avoid liability under Section 1692g. (*See generally* 1st Opp.). Nor is it apparent that the Third Circuit

10

In addition, the Court finds that Plaintiff's reliance on *Norman v. Allied Interstate, LLC*, 310 F. Supp. 3d 509 (E.D. Pa. 2018) is not persuasive. (1st Opp. at 18–19). Norman received a debt collection letter with a statement regarding her thirty-day dispute and validation period pursuant to Section 1692g. *Norman*, 310 F. Supp. 3d at 512. In addition, the letter provided the following:

> To make a payment, please telephone us at 866–466–3142 or mail your payment . . . . [Y]our account will be debited on the day we receive your payment. Your check will not be returned.

*Id.* Norman argued Allied's representation that her account would be debited immediately, and that her check would not be returned, together with "'anticipatory language welcoming payment'—in the absence of any clarifying language—overshadowed the validation notice" leaving an unsophisticated consumer uncertain of her rights. *Id.* at 519. Akin to Plaintiff in the instant action, Norman questioned what would happen in hypothetical scenarios: "If she sent a payment, would she be giving up her rights to dispute or verify the debt? If she disputed the debt, and then sent payment (or did both simultaneously), and the debt were found invalid, would Allied return her payment?" *Id.* at 519–20. Importantly, the *Norman* court acknowledged that "Allied's request for payment did not 'standing alone' violate the Act." *Id.* at 520 (quoting *Wilson*, 225 F.3d at 357). Rather, in concluding that Norman adequately alleged a claim pursuant to Section 1692g, the court reasoned that "it was Allied's request for payment and warning that checks would be immediately deposited and not returned, without explaining that its demand did not override the consumer's rights under section 1692g that rendered the validation notice ineffective." *Id.* (internal quotations omitted). Thus, the court found that without a reconciling statement, the least

---

explicitly requires such statements. *See Wilson*, 225 F.3d at 355 nn.4–5 (discussing, but not expressly adopting, the guidance articulated in *Bartlett v. Heibl*, 128 F.3d 497 (7th Cir. 1997)); *see also Panto*, 2011 WL 843899, at *3 n.1.

11

sophisticated consumer would be uncertain as to "how Allied's demands 'fit[] together' with her dispute and validation rights." *Id.*

*Norman* is inapposite because this matter does not involve a debt collection letter that contains a representation as to the immediate debit of Plaintiff's account or immediate deposit of her checks. *See Bernard*, 2022 WL 1557270, at *5. Rather, the October 15 Letter is similar to the letter examined in *Wilson*, which presented two options—pay the debt or dispute the debt within thirty days—neither being emphasized over the other or impressing upon plaintiff that payment before the thirty-day dispute period would be immediately deposited and not returned. *See id.*; *see also Wilson*, 225 F.3d at 356. Notwithstanding Halsted's silence as to the procedure following a potential dispute, the Letter made clear that Plaintiff "could exercise h[er] right to dispute the debt as an initial matter." *Bernard*, 2022 WL 1557270, at *5. Accordingly, the Court concludes that the October 15 Letter does not overshadow or contradict the Validation Notice in violation of 1692g. Thus, Plaintiff's FDCPA claim premised on Sections 1692g(a)(4), (5), and 1692g(b) is dismissed.

### B. The Compromise Offers Are Not False, Deceptive, or Misleading Under Section 1692e

Next, Plaintiff alleges that the compromise offers listed in the October 15 Letter are false, deceptive, and misleading in violation of Sections 1692e, 1962e(2)(A), and 1692e(10) because only one offer reflects "40% off [her] balance." (Am. Compl. ¶¶ 36–43 & 78–83; 1st Opp. at 15 n.1). Section 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," which includes "[t]he false representation of . . . the character, amount, or legal status of any debt." § 1692e(2)(A). Section 1692e(10) imposes liability for "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.* §

12

1692e(10). "A debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Dotson v. Nationwide Credit, Inc.*, 828 F. App'x 150, 153 (3d Cir. 2020) (quoting *Brown*, 464 F.3d at 455).

### 1. The Deadline to Accept Either Compromise Offer is Not Deceptive

First, Plaintiff maintains that her Section 1962e claims are premised on the same allegations set forth above as to her Section 1962g claims—those being that the Letter is deceptive because it does not specify whether Plaintiff's payment under either compromise offer must be mailed or received by December 1, 2020. (1st Opp. at 15 n.1). Defendants argue that Plaintiff's claim is barred under the FDCPA's one-year statute of limitations pursuant to Section 1692k(d). (H. Mov. Br. at 11–13). Second, even assuming Plaintiff's claim is timely, Defendants assert that the December 1, 2020 deadline for acceptance of either compromise offer is immaterial.[6] (*Id.* at 13–14). The Court agrees with Defendants.

As noted in a nearly identical matter, *see Pistone*, "[o]ther courts have faced similar issues." 2022 WL 525934, at *4 (first citing *Kucur v. Fin. Recovery Servs., Inc.*, No. 19-5453, 2020 WL 1821334, at *3 (E.D.N.Y. Apr. 9, 2020) (finding this issue irrelevant because the difference amounted to "a matter of days at most"); and then citing *Perdomo v. Firstsource Advantage, LLC*, No. 19-03546, 2019 WL 4085255, at *2 (E.D.N.Y. Aug. 28, 2019) ("[A]n ambiguity that, in the worst-case scenario, would lead a consumer to mail her payment a few days earlier than necessary does not rise to the level of a materially misleading statement.")); *see also Yoo v. Dynamic Recovery Sols., LLC*, No. 19-21601, 2020 WL 12654351, at *1 (D.N.J. Feb. 26, 2020) ("This language is not ambiguous. A statement that something is 'due' on a particular day means precisely

---

[6] Relevant here, "[a] statement is material if it is capable of influencing the decision of the least sophisticated debtor." *Simon v. FIA Card Servs. NA*, 639 F. App'x 885, 888 (3d Cir. 2016) (internal quotations omitted). The Third Circuit has noted that the materiality standard "is simply another way of phrasing [the least sophisticated debtor] standard we already employ when analyzing claims[.]" *Jensen*, 791 F.3d at 421.

13

that – whatever is owed must be received by that date."). The Court finds this reasoning persuasive. At most, the difference between mailing payment by December 1 and a debt collector's receipt of payment by December 1 is negligible—a mere few days. *See Pistone*, 2022 WL 525934, at *4.

However, a plain reading of the October 15 Letter is most persuasive. Indeed, if Plaintiff chose a compromise option, the Letter makes clear that she should "call . . . or visit pay.halstedfinancial.com to make a payment." (Ex. A). The only way one could make a payment is via electronic means, eliminating the need to use a postal courier. Thus, even the least sophisticated debtor could not be misled into making a payment too late given these exclusive electronic payment options. *Pistone*, 2022 WL 525934, at *4. Accordingly, Plaintiff fails to set forth sufficient facts to support a Section 1692e claim under this theory.[7]

### 2. The Compromise Options are Not Deceptive

Second, Plaintiff submits that the compromise options are deceptive given the text box in the upper-righthand corner of the October 15 Letter, which states:

**40%**
off your balance

Specifically, Plaintiff argues that only the first compromise offer deducts 40% from her balance due of $690.19 and that the failure to qualify, restrict, or limit the Letter's language constitutes a violation of Section 1692e. (1st Opp. at 15 n.1). Stated differently, there is no dispute that the first compromise offer presents 40% off Plaintiff's balance; however, she argues that the second compromise offer is deceitful because it amounts to less than 40% off. (*See id.*). Defendants

---

[7] Because the Court finds that the December 1 deadline is immaterial, the Court need not address whether the statute of limitations acts as an independent bar to Plaintiff's Section 1692e claim.

maintain that the compromise offers are not misleading because (i) the least sophisticated debtor is expected to perform simple math and (ii) when read as whole, the Letter clearly presents an alternative offer that does not deduct 40% off Plaintiff's balance due. (H. Mov. Br. at 6–7). For the reasons expressed below, the Court agrees with Defendants.

Here, the Letter clearly offers a compromise of 40% off Plaintiff's total balance, as provided by the text box. (*See* Ex. A). The first compromise option consists of a $414.11 payment, which is 40% off $690.19, Plaintiff's total balance, and provides a savings of $276.08. (*Id.*). The Letter explicitly presents the second compromise option as an alternative "[i]f [Plaintiff] cannot take advantage of the above offer." (*Id.*). Indeed, the second compromise option consists of a $552.15 payment, comprised of three $184.05 payments over three consecutive months. (*Id.*). Under the second option, Plaintiff would save $138.04—exactly half of the savings presented under the first option. (*See id.*).

Because the least sophisticated debtor is "bound to read collection notices in their entirety," the Court concludes that even the least sophisticated consumer cannot reasonably interpret the Letter to contain more than one meaning. *See Campuzano-Burgos*, 550 F.3d at 298–99 (collecting cases); *see also Pistone*, 2022 WL 525934, at *3. Critically, the least sophisticated consumer cannot be misled because the second compromise offer is presented as an alternative to the first. (*See* Ex. A ("If you cannot take advantage of the above offer . . .")). Moreover, the Letter includes different payment totals and savings under each option, which mathematically reflect 40% off and 20% off, respectively. (*See id.*). The alternative language, coupled with different payment totals and savings, would not deceive the least sophisticated debtor to believe that the alternative option provides a 40% savings. *See Pistone*, 2022 WL 525934, at *3 (dispelling an identical argument for the same reasons).

Accordingly, Plaintiff's FDCPA claim for alleged violations of Section 1692e, 1692e(2)(A), and 1692e(10) are dismissed.

### C. Amendment

The Court need not permit Plaintiff a second opportunity to amend if it would be futile. *See, e.g.*, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002). Here, an amendment to Plaintiff's dismissed claims would be futile because they are based entirely on the October 15 Letter that is properly before the Court. Indeed, there are no additional facts that would cure the deficiencies noted herein. Accordingly, Plaintiff's FDCPA claim premised on alleged violations of Sections 1692g and 1692e are dismissed with prejudice as futile. *See Akegnan v. Trinity Fin. Servs., LLC*, No. 22-15761, 2021 WL 5984896, at *7 (D.N.J. Dec. 6, 2021) (noting that courts in the Third Circuit "have dismissed FDCPA claims with prejudice where amendment would be futile") (collecting cases).

### IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' motions to dismiss. An appropriate Order follows.

Dated: September 12, 2022                        *s/Esther Salas*
                                                                           Esther Salas, U.S.D.J.